WO                                                                                               KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| Jonathan McAllister, Sr., | No. CV 19-00614-PHX-JAT (DMF) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Jonathan McAllister, Sr., who was formerly in the custody of the Arizona Department of Corrections (ADC), filed a Second Amended Complaint alleging violations of federal and state law. (Doc. 8.) Defendants move for summary judgment. (Doc. 45.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 47), and he opposes the Motion. (Doc. 54.)

**I.     Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated federal and state law claims against Defendant Ryan in his individual and official capacities regarding ADC Director Ryan's policy allowing the seizure of Veterans' Disability Benefits in violation of 38 U.S.C. § 5301(a) and Arizona Revised Statutes section 12-1539(A), and his refusal to return Plaintiff's disability benefits, negligence claims against Defendants Huizar and Valdez for failing to conduct an audit of Plaintiffs' inmate account after being informed that deductions violated state and federal law and that there were

errors in the charges, a claim against Defendant Ryan in his official capacity for maintaining a policy of removing inmates from the diet list without notice and without consulting medical staff if an inmate fails to attend a meal, and a state-law tort claim against Defendant Hernandez for charging Plaintiff for a diet card when he was allegedly exempt under state law and for charging Plaintiff for a second diet card when he did not receive one. (Doc. 15.) The Court dismissed the remaining claims and Defendants. (*Id.*)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III.    Facts[1]

The ADC provides each inmate with an Inmate Trust Account (ITA), which allows inmates to send and receive money while in the custody of the ADC. (Doc. 46 ¶ 1.) Inmates can spend the money in their ITAs on a variety of items and services, including, but not limited to, purchases from the inmate store, legal copies, services, postage, and supplies, which are called "inmate initiated deductions." (*Id.* ¶ 2.) Certain expenditures are allowed even if an inmate does not have sufficient funds in his ITA to cover the transaction. (*Id.* ¶ 3.) Allowable expenditures even when inmates have insufficient funds in their Spendable Account include: legal copies, services, postage and supplies, health care fees, inmate legal access to the courts, replacement Inmate Identification Cards, clips or lanyards, re-testing for High School equivalency, copies of medical records, lost/damaged Inmate Resource Center/library books, and department-issued clothing. (*Id.* ¶ 4.) ITAs of inmates allowed expenditures when they have insufficient funds in their Spendable Account are placed on hold until there are enough funds in the account to cover the charges. (*Id.* ¶ 5.)

If inmates do not repay the ADC for holds on inmate-initiated transactions prior to being released, their ITA shall remain on hold indefinitely and collection is only attempted if the inmate is returned to custody. (*Id.* ¶¶ 7-9.) ADC inmates have the option of having checks and/or funds from associations like the Administration of Veteran Affairs (VA) or the Social Security Administration directly deposited into their ITAs. (*Id.* ¶ 10.) The ADC requests inmates receiving such benefits have them directly deposited into the ITA so that a special designation can be placed on those funds. (*Id.* ¶ 11.) This prevents such funds

---

[1] Although the Court provided notice to Plaintiff pursuant to *Rand* regarding the requirements of a response, Plaintiff did not file a controverting statement of facts or separate statement of facts with his Response to Defendants' Motion for Summary Judgment.

from being assigned or seized and provides clarity on the source of the funds. (*Id.* ¶ 12.) ADC policy is that there are no mandatory deductions on funds received directly from the VA. (*Id.* ¶ 13.) ADC does not have resources to independently verify the source of inmate funds for over 40,000 inmates. (*Id.* ¶ 14.)

Plaintiff was in the custody of the ADC from December 2008 to April 2014. (*Id.* ¶ 15.) During that time, Plaintiff incurred $5,606.99 in holds on his ITA. (*Id.* ¶ 16.) Plaintiff re-entered custody on January 19, 2018 with $1,872.39 transferred from his time spent in the custody of the Maricopa Sheriff's Office (MCSO). (*Id.* ¶¶ 17-18.) ADC suspended the $1,872.39 because of the holds of $5,606.99 that remained on Plaintiff's ITA. (*Id.* ¶ 19.) On January 27, 2018, Plaintiff requested that his bank, Arizona Federal Credit Union, issue a cashier's check of $7,000 for Plaintiff to place in his ITA. (*Id.* ¶ 20.) In total, Plaintiff deposited $8,872.39 into his ITA from both his account at MCSO and his cashier's check from his private bank. (*Id.* ¶ 21.) From that sum, his prior holds of $5,606.99 were collected along with additional withdrawals he made in 2018 that brought his total withdrawals to $6,107.72. (*Id.* ¶ 22.)

Plaintiff started the grievance process regarding these transactions with an informal complaint on January 29, 2018 and indicated that because the money consisted of VA benefits, it could not be collected. (*Id.* ¶ 24.) Correctional Officer (CO) III Cuen responded and informed Plaintiff that because the money had come from MCSO, inmate banking had deducted money from Plaintiff's ITA that he owed from his previous incarceration. (*Id.* ¶ 25.) On February 9, 2018, Plaintiff submitted a formal grievance indicating that the money was VA benefits and therefore could not be collected. (*Id.* ¶ 26.) Associate Deputy Warden Pyle responded and informed Plaintiff that monies coming from the MCSO and his private bank would be classified at intake and not as coming from the VA. (*Id.* ¶ 27.) Pyle also informed Plaintiff that he had the option to have checks from the VA directly posted to his account and that would ensure that no deductions would be taken. (*Id.* ¶ 28.) Plaintiff has never had the VA directly deposit benefits into his ITA. (*Id.* ¶ 29.) Plaintiff was released from ADC under community supervision on September 17, 2019. (*Id.* ¶ 30.)

## IV.   Discussion

Defendants argue that they are entitled to summary judgment as to Plaintiff's claims because (1) Plaintiff's negligence claims are barred by Arizona Revised Statutes section 31-201(F), (2) Plaintiff's official capacity claims are moot because Plaintiff is no longer in custody, (3) Defendants did not violate 38 U.S.C. § 5301(a) or Arizona Revised Statutes section 12-1539(A), and (4) Defendants are entitled to qualified immunity.  (Doc. 45.)

### A.   Claims relating to Plaintiff's Diet

On screening, the Court recognized two claims regarding Plaintiff's diet: an official capacity claim against Ryan based on Plaintiff's allegations that Ryan had a policy of removing inmates from the diet list without notice and without consulting medical staff if an inmate fails to attend a meal, and a state-law tort claim against Defendant Hernandez for charging Plaintiff for a diet card when he was allegedly exempt under state law and for charging Plaintiff for a second diet card when he did not receive one.

#### 1.   The Official Capacity Claim

Defendant Shinn, who is the current Director of the ADC, was later substituted for Defendant Ryan as to the official capacity claims against Defendant Ryan.  Plaintiff's request for equitable relief as to these claims is moot because Plaintiff has been released. "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (quoting *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012)).  Although there is an exception to the mootness doctrine for claims that are capable of repetition, yet evade review, that exception is limited to cases where the duration of the challenged action is too short to be fully litigated before it ceases, and where there is a reasonable expectation that the plaintiff will be subjected to the same action again. *Alvarez*, 667 F.3d at 1064.  The possibility that an inmate may commit another crime and be returned to custody is too speculative a basis on which to conclude that his claims are capable of repetition.  *Id.* at 1064-65.  Here, there is no evidence of a non-speculative

reasonable expectation that Plaintiff will be subjected to the policies relating to Inmate Accounts and diet cards in prison again.

Likewise, although an exception to mootness has been recognized where a plaintiff is challenging ongoing policies to which others will continue to be subject, the Ninth Circuit Court of Appeals has not extended this exception beyond "short-lived pretrial proceedings in criminal prosecutions, where civil class actions would not be conducive to obtaining the relief sought." *Id.* at 1065.   1983

Moreover, Plaintiff cannot maintain a claim for damages under § 1983 against Defendant Shinn because Shinn, in an official capacity suit for damages, is not a "person" within the meaning of § 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit [under § 1983] because they assume the identity of the government that employs them" and States are not "persons" under § 1983). Accordingly, summary judgment will be granted in favor of Shinn as to Plaintiff's § 1983 claim against him regarding Plaintiff's diet.

### 2. The Negligence Claim Against Hernandez

Defendants argue that Arizona Revised Statutes section 31-201(F) prohibits Plaintiff's negligence claim against Hernandez. Arizona Revised Statutes section 31-201.01(F) provides that "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." Ariz. Rev. Stat. Ann. § 31-201.01(F). There is no dispute that Hernandez was working within the scope of legal duty when he allegedly improperly charged Plaintiff $5.00 for a diet card on two occasions. Accordingly, Plaintiff's negligence claim against Hernandez is barred by Arizona Revised Statutes section 31-201.01(F). Even if Plaintiff had named the State as a Defendant to the negligence claim, Arizona Revised Statutes section 31-201.01(L) "limits inmates' tort claims against the State to those involving serious physical injury or ones authorized by federal statute." *Tripati v. State*, 16 P.3d 783, 786 (Ariz. Ct. App. 2000); Ariz. Rev. Stat. § 31-201.01(L). As such, Plaintiff could not have maintained his negligence claim against

- 6 -

the State because he does not allege that he suffered serious physical injury. Accordingly, summary judgment will be granted in favor of Defendants as to Plaintiff's negligence claim against Defendant Hernandez.

## B. Plaintiff's Claims Regarding ITA Deductions

Defendants assert that they are entitled to summary judgment on Plaintiff's claims regarding ITA deductions because they did not violate 38 U.S.C. § 5301 or Arizona Revised Statutes section 12-1539(A).

Pursuant to 38 U.S.C. § 5301,

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 5301. Similarly, Arizona Revised Statutes section 12-1539(A) exempts federal disability benefits awarded to veterans for service-connected disabilities from claims of creditors and restates that such benefits are not subject to attachment, levy, or seizure under any legal or equitable process as provided by federal law. Ariz. Rev. Stat. § 12-1539(A)(1)-(2). .

In *Nelson v. Heiss*, the Ninth Circuit Court of Appeals held that when a prison deducted plaintiff's incoming veteran's benefits to pay off holds placed on his ITA, the prison violated 38 U.S.C. § 5301 because prison officials allowed plaintiff to assign his future benefits and then seized those to repay the prison system. 271 F.3d 891, 897 (9th Cir. 2001.)

Defendants argue that Plaintiff's claim is distinguishable from *Nelson* because in *Nelson*, the plaintiff's account was funded by payments of Veteran's Disability Benefits administered by the VA, which deposited the funds directly into Plaintiff's ITA account. Defendants assert that here, despite the ADC's policy of allowing VA benefits to be directly deposited into an ITA, Plaintiff chose to withdraw funds from his personal bank

account and deposit them into his ITA with no indication that those funds were Veteran's Benefits. Defendants assert that the ADC's policy of requiring that the VA direct deposit funds into the ITA serves the purpose of allowing the prison to put a special designation on those funds to ensure that those funds are not assigned or seized and provides complete clarity as to the source of funds.

The ADC's policy that it does not use money deposited by the VA into a prisoner's account to pay off holds does not violate 38 U.S.C. § 5301 or Arizona Revised Statutes section 12-1539(A). There is no evidence in the record supporting Plaintiff's official capacity claim against Shinn based on the ADC's policies, practices, or customs regarding using VA benefits to pay off holds on ITAs.

Further, there is no evidence that the ADC or ADC officials knew that Plaintiff was claiming that the money deposited into his ITA was derived from his Veteran's Benefits when the ADC applied the money toward Plaintiff's holds. Plaintiff argues that when he told the ADC that the money was derived from his Veteran's Benefits, they should have immediately reimbursed the money to him. There is no evidence in this record, however, that Plaintiff produced any evidence to the ADC supporting his statement that the money in his ITA was money from the VA.

Indeed, even in the record before the Court, Plaintiff has not shown that the money in his ITA consisted of his VA benefits. Plaintiff produces evidence in the form of bank statements between December 1, 2016 and November 1, 2017 that the VA deposited monthly benefits of $1,776.00 into his Arizona Federal Credit Union account. (Doc. 54 at 22-37.) The bank statements also show, however, that this bank account was not solely used for Plaintiff's VA benefits and that deposits from other sources were mixed in with Plaintiff's VA benefits. (*See id.*) As such, even if ADC employees were in possession of Plaintiff's Arizona Federal Credit Union statements, they would not have been able to discern which monies subsequently deposited into Plaintiff's ITA originated as VA

benefits.[2]  Accordingly, there is no evidence in the record that the ADC's policy regarding Veterans' Disability Benefits and ITA holds violates 38 U.S.C. § 5301(a) and Arizona Revised Statutes section 12-1539(A), and there is no evidence that Defendants Ryan, Huizar, or Valdez improperly failed to reimburse Plaintiff's ITA.  Accordingly, summary judgment will be granted in favor of Defendants as to these claims.[3]

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 45).

(2) Defendants' Motion for Summary Judgment (Doc. 45) is **granted**, and the action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

Dated this 26th day of May, 2020.

James A. Teilborg
Senior United States District Judge

---

[2] Defendants also argue that pursuant to 38 C.F.R. § 3.665, Plaintiff would have received less disability benefits if he had informed the VA of his incarceration, and so Plaintiff chose not to have his Veteran's Benefits direct deposited because that would have put the VA on notice that his Veteran's Benefits should be reduced.  This argument appears to question whether Plaintiff would have standing to recover funds that he was not rightfully entitled to receive if he had informed the VA of his incarceration.  Because, as discussed above, the origin of the funds in question is based on mere conjecture, the Court cannot determine whether there is a standing issue on this record.

[3] Because the Court finds summary judgment is appropriate, it does not address the remainder of Defendants' arguments.